APPEL, Justice
(concurring specially).
The majority notes that this is a case of first impression and then chides the Iowa Department of Transportation (IDOT) for not citing a case striking down a statute equivalent to Iowa Code section 573.2. Of course, the subcontractors did not cite a case supporting the opposite proposition. The lack of cited authority is thus not dispositive or even indicative of the proper result. We often face a lack of authority, one way or another, when considering questions of first impression. In these cases, we may be called upon to think on our own.
The court’s independent research has uncovered one case from another jurisdiction, however, that is close to the present case. In Solomon v. Department of State Highways & Transportation, 131 Mich.App. 479, 345 N.W.2d 717, 718-19 (1984), the appellate court held that requiring the state to pay for losses incurred by a contractor on a state construction project would violate Michigan’s lending of credit provision in its state constitution. The majority dismisses Solomon as factually distinguishable because it did not involve a statute and notes it is devoid of analysis. Yet, the Michigan court’s approach seems *465 loyal to the language of the Michigan constitutional provision, which I do not find distinguishable from article VII, section 1 of the Iowa Constitution. See Mich. Const, of 1963 art. 9, § 18 (“The credit of the state shall not be granted to, nor in aid of any person, association or corporation, public or private, except as authorized in this constitution.”).
If there had been no Iowa caselaw on the question, I would perhaps be inclined to follow the approach in Solomon. Certainly, there is nothing in the history of article VII, section 1 that helps us. Nothing in the text suggests a contrary result. The somewhat open-ended provisions of article VII, section 1, however, have been subject to a judicial gloss. Specifically, in Grout v. Kendall, 195 Iowa 467, 473-74, 192 N.W. 529, 531 (1923), we narrowly interpreted the credit provision of article VII, section 1 to apply only to prohibit the state from acting as a surety and incurring secondary liability. Thus, by judicial doctrine, we narrowed the scope of the credit provision of article VII, section 1.
Looking further into Grout, where judicial doctrine under article VII, section 1 begins, this court held the strong prohibitions in article VII, section 1 did not prohibit the state from incurring indebtedness by borrowing money to directly pay for obligations with a public purpose, namely, the payment of bonuses to veterans of World War I. Id. at 468, 473, 192 N.W. at 529, 531. This court contrasted the borrowing scheme at issue in Grout with historic disasters where state governments, with the often mistaken belief the primary obligor would pay, guaranteed the obligations of private corporations in massive undertakings, such as railroad and canal projects, undertaken for private benefit. See id. at 472-73, 192 N.W. at 531. When the private corporations failed to pay, the states became overwhelmed with indebtedness the states would never have agreed to incur as a primary obligor. Id. Accordingly, we held article VII, section 1 prohibited the state from incurring secondary liability, but was silent as to the creation of primary indebtedness, such as that at issue in the case. Id. at 473, 192 N.W. at 531. We cited Grout’s emphasis that article VII, section 1 covers surety relationships in a number of subsequent cases. See, e.g., Richards v. City of Muscatine, 237 N.W.2d 48, 62 (Iowa 1975); Green v. City of Mt. Pleasant, 256 Iowa 1184, 1197-98, 131 N.W.2d 5, 14-15 (1964).
In this case, unlike in Grout, IDOT is not the primary obligor. The primary obligor was the original contractor, Universal Concrete. Yet, although IDOT will pay twice for most of the concrete services if the subcontractors prevail in this case, and although IDOT will pay what was once a primary obligation of the subcontractor, IDOT will arguably still receive a benefit: it will be more likely that minority subcontractors will feel secure in providing services related to state-owned highways.
I think it is a closer question than does the majority whether these kinds of relationships are outside the scope of article VII, section 1. The relationships are similar to surety relationships in the sense that the primary obligation is not one of IDOT. I am not at all convinced that the formal niceties of the law of suretyship with its fine slicing and dicing provides a sound basis for the interpretation of a constitutional provision in all cases. When dealing with open-textured constitutional provisions, I would look more to the underlying constitutional values and spirit rather than legal arcana.
On balance, however, and consistent with the evolving constitutional doctrine, I conclude that because IDOT in its proprietary capacity is the beneficiary of all of the work of all of the contractors, be they the *466 general contractor or a subcontractor, IDOT may enter into financial arrangement to provide a class of subcontractors with security beyond the promise of the general contractor to pay without running afoul of article VII, section 1.1 would hold nothing more, and nothing less. As a result, I concur in the result in this case.
WIGGINS, J., joins this special concurrence.